UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HENRY'S LOUISIANA GRILL, )<br>INC. and HENRY'S UPTOWN LLC, )<br>       )<br>   Plaintiffs,   )<br>       )<br>v.      )<br>       )<br>ALLIED INSURANCE COMPANY )<br>OF AMERICA,   )<br>       )<br>   Defendant.   ) | CIVIL ACTION FILE NO.<br>_____ |

**MEMORANDUM OF LAW TO SUPPORT MOTION TO DISMISS**

Defendant Allied Insurance Company of America ("Allied") files this memorandum of law to support its motion to dismiss the complaint filed by Henry's Louisiana Grill, Inc. and Henry's Uptown LLC ("Plaintiffs") for failure to state a claim upon which relief can be granted under Rule 12(b)(6). For the reasons provided, Allied's motion should be granted.

### I.    INTRODUCTION

Plaintiffs seek insurance benefits to cover business losses attributed to the closure of their restaurant due to concerns about the spread of COVID-19. While admitting that no virus was located on the premises, they state that they closed their dining room in response to government orders. They nevertheless assert that their reduced income was caused by a "direct physical loss" as required by the policy and

1

that their claimed loss was not caused "directly or indirectly" by COVID-19 so as to fall within the terms of the virus exclusion.

Because Plaintiffs' factual allegations do not show a covered loss, therefore, their complaint should be dismissed under Rule 12(b)(6)

## II. PLAINTIFFS' ALLEGATIONS

### A. Plaintiffs' Insurance Policy

Plaintiffs seek coverage under policy number ACP BPFL 3047569584 that was issued to multiple named insureds, including Plaintiffs, for the period March 1, 2020 to March 1, 2021 (the "Policy").[1] (Doc. X ¶ 8; Exh. 1).  In pertinent part, the Policy covers business interruption under the following insuring agreement:

> We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." *The suspension must be caused by direct physical loss of or damage to* property at the described premises.

(Doc. X, p. X) (emphasis supplied).  The Policy also covers loss of business income "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises" and an action by a "civil authority" "*prohibits* access to the described premises" (Id. ¶ 20) (emphasis supplied).

Coverage is subject to exclusions, however, including the "Virus or Bacteria" exclusion "for loss or damage caused *directly or indirectly* by. . . [a]ny virus,

---

[1] Because Plaintiffs attached the policy to the complaint, it forms part of the pleadings for "all purposes" including this motion to dismiss.  See Fed. R. Civ. P. 10(c).

2

bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (See Doc. X, p. X) (emphasis supplied).

### B. Plaintiffs' Claimed Loss

Plaintiffs allege that the Georgia governor issued Executive Order #03.14.20.01 on March 14, 2020 that declared a public health state of emergency due to the spread of the COVID-19 virus. (Doc. X ¶ 9; Exhibit A).[2] Nothing contained in that Executive Order of March 14, 2020 required Plaintiffs to shutter their doors. (Exhibit A.)[3] Nevertheless, Plaintiffs "immediately closed [their] dining rooms for normal restaurant service" even though no virus was found on the premises. (Doc. X, ¶¶ 11 and 13.)

On March 27, 2020, thirteen days later after deciding to close their dining rooms, Plaintiffs filed a claim with Allied to cover their business losses. (Doc. X ¶ 14.) Following an investigation, Allied advised Plaintiffs that the claim was not covered by the Policy because it was not caused by a "direct physical loss" and fell

---

[2] A copy of the Executive Order referenced in the complaint is properly before the Court in considering this motion to dismiss because the Executive Order is "central to the plaintiff's claim and its authenticity is not challenged." Garcon v. United Mut. of Omaha Ins. Co., 779 F. App'x. 595, 599 (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).

[3] Plaintiffs do not cite the governor's subsequent order of April 2, 2020 that limited businesses from operating even though the complaint was filed thereafter on June 12, 2020. Instead, their claim is based solely (and intentionally) on their decision to close the dining room after the March 14, 2020 executive order that did not require them to do so.

within the virus exclusion. (Id., ¶¶ 15-16.) Plaintiffs nevertheless contend that the suspension of their operations by deciding to close their business was caused by a "direct physical loss" and that the virus exclusion does not apply because COVID-19 was not detected on the premises. (Id., ¶¶ 13, 15-17.) They seek a declaratory judgment that their claim is covered (Count I) and damages for breach of contract because Allied determined that the claim was not covered by the Policy (Count II). (Doc. X ¶¶ 25-32.)

Because Plaintiffs do not allege facts to support their claims, Allied's motion should be granted.[4]

### III. ARGUMENT AND CITATION TO AUTHORITY

### A. Motion to Dismiss Standard

To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S.

---

[4] Plaintiffs have not shown the requisite "case or controversy" jurisdiction for a declaratory judgment claim, which is a "forward-looking remedy" that is not appropriate to redress injuries already suffered. AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co., 938 F.3d 1170, 1176, (11th Cir. 2019). An insured's claim for insurance benefits, in contrast, is a "retrospective harm" that does not establish a case and controversy. Id. *See also* Gordon v. Auto-Owners Insurance Company, 2020 U.S. Dist. LEXIS 93587, *6 (S.D. Ga. 2020) (dismissing the insured's declaratory judgment action because the insurer had determined that there was no coverage and there was no need for guidance on future conduct). This Court's jurisdiction exists, therefore, to consider the breach of contract claim *only*.

544, 555 (2007). Although courts must accept all well-pleaded facts as true, they are not required to accept a plaintiff's legal conclusions. *See* Ashcroft v. Iqbal, 556 U.S. 662 (2009).

As explained immediately below, whether policy language applies so as to cover certain facts is a question of law to be resolved by the court. Varsalona v. Auto-Owners Ins. Co., 281 Ga. App. 644, 645-646, 637 S.E.2d 64, 66 (2006). Consequently, whether Plaintiffs have asserted facts to show coverage under the policy is ripe for consideration on a motion to dismiss.

### B. Georgia's Rules of Policy Interpretation

"Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Reed v. Auto-Owners Ins. Co., 284 Ga. 286, 287, 667 S.E.2d 90, 92 (2008). "Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." Varsalona, 281 Ga. App. at 645-646, 637 S.E.2d at 66; see also Sewell v. Hull/Stoney Dev., LLC, 241 Ga. App. 365, 366-67, 526 S.E.2d 878, 880 (1999) ("a contract should be construed by the court where the language is undisputed but the meaning of that language is in dispute.").

The insured has the burden "of proving that a claim falls within the coverage of the policy." Ace Am. Ins. Co. v. Wattles Co., 930 F.3d 1240, 1250, n. 14 (11th Cir. 2019) (*quoting* Travelers Home and Marine Ins. Co. v. Castellanos, 297 Ga. 174, 773 S.E.2d 186 (2015)). Only then could the burden fall to the insurer to invoke an exclusion from coverage. Id. Given this rubric, Allied will first address the absence of factual allegations that Plaintiffs' suspension of operations was caused by a "direct physical loss," followed by the application of the clear and unambiguous virus exclusion. For these alternative reasons, Plaintiffs have failed to allege a covered claim under the Policy.

### C. **Plaintiffs' decision to suspend their operations was not caused by a "direct physical loss" as required by the Policy for coverage to apply**

Under the plain language of the Policy, coverage for business interruption requires that a "direct physical loss of or damage to" property cause a suspension of operations. When Georgia courts have interpreted identical language, they have found it unambiguously to require a *physical change* to the property. As in this case, the policy in AFLAC Inc. v. Chubb & Sons, Inc. 260 Ga. App. 306, 581 S.E.2d 317 (2003) provided coverage for "direct physical loss of or damage to" property. In considering that identical clause, the court construed the term "direct physical loss" as follows:

> [T]he words 'loss of' in the International Policy and the words 'damage to' used in both policies make it clear that coverage is predicated upon a change in the insured property resulting from an

6

> external event rendering the insured property, initially in a satisfactory condition, unsatisfactory. The word 'direct' as modifying the word 'physical' means only that the change in the insured property occurred by the action of the fortuitous event triggering coverage.
>
> \*\*\*
>
> While we have been unable to find any Georgia precedent construing the term of insurance "direct physical loss or damage," the common meaning of the words and the policies as a whole indicate that it contemplates an *actual change in* insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.

Id. at 307-8, 581 S.E.2d at 319. *See also* Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am., 2014 U.S. Dist. LEXIS 165232, \*18 (D.N.J. 2014) (stating that AFLAC established the standard in Georgia requiring there to be a physical change in the property for "direct physical loss" to apply).

Georgia's construction is consistent with the purpose of the policy language; as explained in a leading treatise, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Couch, Insurance, 3d § 148.46. It is consistent as well with the law in other jurisdictions. *See* Port Auth. v. Affiliated FM Ins. Co., 311 F.3d 226, 235 (3rd Cir.

2002) ("In ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure."); Universal Image Prods. v. Chubb Corp., 703 F. Supp. 2d 705, 710 (E.D. Mich. 2010) (holding that "direct physical loss or damage" in business interruption policy requires a change in the structural integrity of insured property); Mastellone v. Lightning Rod Mut. Ins. Co., 175 Ohio App. 3d 23, 42, 884 N.E.2d 1130, 1144 (2008) (finding no physical loss to support business interruption coverage where stains resulting from mold could be removed by cleaning).

The above authorities make clear that Plaintiffs did not decide to close their dining rooms due to a physical change in the premises for coverage to apply. Indeed, viewed from another perspective, Plaintiffs' claim cannot *possibly* meet the definition of "direct physical loss" because the calculation of the amount for lost business income is during the "period of restoration" which ends at the earlier of: "(i) The date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or (ii) The date when business is resumed at a *new* permanent location." (Doc. X, p. X) (emphasis supplied). Based on Plaintiffs' factual allegations, there is nothing to be "repaired, rebuilt or replaced" nor will they need to resume operations "at a new permanent location." Plaintiffs' suggestion that loss of use satisfies the "direct physical loss" language is simply untenable for this reason as well.

For all these reasons, Plaintiffs have not alleged facts to support their legal conclusion that their business income loss is covered by the Policy.

### D. There is no coverage under the "Civil Authorities" provision because Plaintiffs were not barred from entering their premises because of physical damage to other property

Although Plaintiffs quote the Policy's "Civil Authorities" coverage provisions in their complaint, they do not allege that it applies to their claim – nor could they. In pertinent part, the "Civil Authorities" coverage applies where there is "damage to property *other than property at the described premises* … that prohibits access to the described premises." (Doc. X, p. X) (Emphasis supplied). More specifically, the provision requires that both of the following conditions are met:

> (1) Access to the area immediately surrounding the damaged property is *prohibited* by civil authority as a result of the damage, and the described premises are within that area but are *not more than one mile* from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

The above policy language plainly requires that *access* to the insured premises be *prohibited* by a civil authority. A mere restriction on a particular use of the property is not enough. In Paradies Shops, Inc. v. Hartford Fire Insurance Company, 2004 U.S. Dist. LEXIS 30124 (N.D. Ga. 2004), for example, an airport vendor sought to recover under civil authority coverage for losses sustained after September

9

11, 2001 because all flights had been grounded by the Federal Aviation Administration. The provision did not apply, however, because even if airport traffic was non-existent as a result of the order, no authority had prohibited access to the business. Id. at *7; s*ee also* Syufy Enters. v. Home Ins. Co., 1995 U.S. Dist. LEXIS 3771, *5, 1995 WL 129229 (N.D. Cal. 1995) (Dawn-to-dusk curfew imposed by City of Los Angeles during Rodney King protests did not "prohibit access" to theater chain within the meaning of a business interruption policy).

Plaintiffs do not allege – nor could they – that the Executive Order prohibited them from accessing the business. Instead, they merely Plaintiffs allege that the Executive Order was created to curtail the spread of the virus, and not because of physical damage to other property. (Doc. X ¶ 10.) *See* Assurance Co. v. BBB Serv. Co., 259 Ga. App. 54, 57, 576 S.E.2d 38, 41 (2003) (holding that civil authority coverage requires that the civil authority's order contemplate actual property damage that has already occurred). Accordingly, even though not pled in the complaint, the Civil Authorities coverage does not apply to Plaintiffs' claim.

### E. The "Virus and Bacteria" exclusion precludes coverage in any event

Even if Plaintiffs' claim fell within the grant of coverage for business interruption—which it clearly does not— it would be excluded under the "Virus or Bacteria" exclusion, which states, in pertinent part:

> 1. We will not pay for loss or damage caused directly *or indirectly* by any of the following. Such loss or damage is excluded regardless

>of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
>* * *
>
>i. Virus Or Bacteria
>
>(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Doc. X p. X) (emphasis supplied). Georgia courts routinely enforce plain and unambiguous exclusions such as this one.

The starting point for the analysis is Georgia's strong public policy that "insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy." Reed v. Auto-Owners Ins. Co., 284 Ga. 286, 287, 667 S.E.2d 90, 91 (2008). "Thus, a carrier may agree to insure against certain risks while declining to insure against others. … Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Id. at 287, 667 S.E.2d at 91-92. *See also* Sapp v. State Farm & Cas. Ins. Co., 226 Ga. App. 200, 201, 486 S.E.2d 71 (1997) ("[I]nsurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms.")

Reed is a case in point where a landlord was sued for injuries to a tenant who was exposed to carbon monoxide in her residence. The insurer sought a declaration

that an exclusion for the release of pollutants precluded coverage for the claim. In agreeing with the insurer, the Supreme Court found the only question presented was whether carbon monoxide met the definition of a "pollutant" as a "contaminant or irritant." Because carbon monoxide fell squarely within that definition of pollutants, the exclusion applied unambiguously on its plain terms.

In reaching this conclusion, the Supreme Court rejected the notion that there needed to be an environmental impact from the carbon monoxide for the pollution exclusion to apply, as courts in other jurisdictions had held. The Supreme Court reasoned that "[n]othing in the text of the pollution exclusion clause supports such a reading." To engraft that requirement on the policy, therefore, would be creating coverage where none existed under the clear terms of the policy.

The Supreme Court reaffirmed the analysis a few years later in Georgia Farm Bureau Mutual Insurance Company v. Smith, 298 Ga. 716, 784 S.E.2d 422 (2016). where a claim was brought against the insured arising from the ingestion of lead paint. As in Reed, the insured contended that injury did not "arise out of" a "pollutant" because lead paint was not a "contaminant or irritant" and because there was no environmental harm created by its ingestion. The Supreme Court disagreed, however, finding that the "usual and common meaning" of the terms included lead paint as a "pollutant." Further, citing Reed, the Supreme Court reiterated that

"Georgia courts have applied these clauses outside the context of traditional environmental pollution." Id. at 720, 784 S.E.2d at 425.

The Supreme Court reversed the judgment of the Court of Appeals, finding that the "policy unambiguously governs the factual scenario in this case. Accordingly, the Court of Appeals was required to simply apply the terms of the contract as written." Id. at 731, 784 S.E.2d at 426. *See also* Perkins Hardwood Lumber Co. v. Bituminous Cas. Corp., 190 Ga. App. 231, 232, 378 S.E.2d 407, 409 (1989) (finding smoke damage from a fire fell unambiguously within a pollution exclusion in the policy).

The application of the exclusion to Plaintiffs' claim is even clearer than in Reed or Smith; whereas the questions in those cases centered on whether carbon monoxide and lead paint met the broad definition of a "pollutant," the exclusion in Plaintiffs' policy applies expressly to a "virus." The only question remaining, therefore, is whether Plaintiffs' claimed business losses were caused "directly or indirectly" by COVID-19.

Where an exclusion applies to claims "arising out of" specified circumstances, a "but for" causation analysis from tort law applies. *See* Cont'l Cas. Co. v. HSI Fin. Serv., 266 Ga. 260, 262, 466 S.E.2d 4, (1996) (finding policy exclusion for claims arising from "dishonest, fraudulent, criminal, malicious" acts excluded associated claims of negligence because such claims would not have arisen but for the insured's

13

criminal acts); Pilz v. Monticello Insurance Company, 267 Ga. App. 370, 371, 599 S.E.2d 220, 221 (2004) (finding assault and battery exclusion applied to even claims of negligence against day care center because claims would not have arisen "but for" the physical abuse of the child).

Plaintiffs' claim for business losses certainly meets this causation test, as Plaintiffs' would not have decided to close their dining room "but for" the virus called COVID-19. Yet the triggering language in the exclusion in Plaintiffs' policy has an even wider reach as it applies to losses "directly or indirectly" by COVID-19. Under Georgia law, "the words directly or indirectly … should be given their broadest meaning." Adair v. McElreath, 167 Ga. 294, 305, 145 S.E. 841, 846 (1928). Here, Plaintiffs allege that they closed their business "in *direct* response to the Governor's Executive Order." Because the Executive Order was issued because of COVID-19, and Plaintiffs' decided to suspend their operations as a result thereof, their lost business income was caused "directly or indirectly" by a "virus." To engraft a requirement on the exclusion that virus be located on the premises, as Plaintiffs suggests in their complaint, would run directly afoul of Georgia's rules of policy interpretation that requires courts to construe unambiguous policy provisions as they are written. *See* Smith (*quoting* Cotton States Mut. Ins. Co. v. Crosby, 244 Ga. 456, 457-58, 260 S.E.2d 860 (1979) ("the Court of Appeals had 'no more right by strained construction to make the policy more beneficial by extending the

14

coverage contracted for that they would have had to increase the amount of insurance.")

## CONCLUSION

The factual allegations in Plaintiffs' complaint do not support their legal conclusion that the claim is covered by the Policy. Consequently, Plaintiffs' complaint should be dismissed under Rule 12(b)6) for the failure to state a claim upon which relief can be granted.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
PHILIP W. SAVRIN
Georgia Bar No. 627836
psavrin@fmglaw.com
W. SHAWN BINGHAM
Georgia Bar No. 839706
sbingham@fmglaw.com

*Attorneys for Defendant Allied Insurance Company of America*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T:  770.818.0000
F:  770.937.9960

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing **MEMORANDUM OF LAW TO SUPPORT MOTION TO DISMISS** has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

                                        */s/ Philip W. Savrin*
                                        Philip W. Savrin
                                        Georgia Bar No. 627836
                                        psavrin@fmglaw.com
                                        W. Shawn Bingham
                                        Georgia Bar No. 839706
                                        sbingham@fmglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the within and foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS** by depositing a true and correct copy thereof in the United States mail, postage prepaid, properly addressed, and electronically filed the same with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing, to the following attorneys of record:

> James J. Leonard, Esq.
> Barnes and Thornburg LLP
> Prominence in Buckhead
> 3475 Piedmont Road, Suite 1700
> Atlanta, Georgia  30305

This 20th day of July 2020.

> */s/ Philip W. Savrin*
> Philip W. Savrin
> Georgia Bar No. 627836
> psavrin@fmglaw.com
>
> *Attorneys for Defendant Allied Insurance Company of America*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
T:  770.818.0000
F:  770.937.9960