IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HENRY'S LOUISIANA GRILL, INC., et al.,

    Plaintiffs,

    v.

ALLIED INSURANCE COMPANY OF AMERICA,

    Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-2939-TWT

**OPINION AND ORDER**

This is a breach of contract case. It is before the Court on the Defendant's Motion to Dismiss [Doc. 4] and the Plaintiffs' Motion to Certify Questions of Law to the Georgia Supreme Court [Doc. 8]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 4] is GRANTED and the Plaintiffs' Motion to Certify Questions of Law to the Georgia Supreme Court [Doc. 8] is DENIED.

I.     **Background**

The Plaintiffs, Henry's Louisiana Grill and Henry's Uptown ("Henry's), are a restaurant and affiliated "private party and overflow" space, respectively. (Compl. ¶¶ 5–6.) The Plaintiffs maintained insurance through the Defendant, Allied Insurance Company of America ("Allied"). (Compl. ¶ 8.) Generally, the Plaintiffs' policy insured the Plaintiffs "against direct physical loss unless" the

loss was excluded or limited by other provisions in the insurance contract. (Compl., at 30.) As part of its coverage, the Plaintiffs' policy included Business Income coverage:

> g. Business Income
>
>  (1) Business Income with Ordinary Payroll Limitation
>
>   (a) We will pay for the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. . . .
>   (c) We will only pay for loss of "business income" that you sustain during the "period of restoration" and that occurs within the number of consecutive months shown in the Declarations for Business Income-Actual Loss Sustained after the date of direct physical loss or damage. . . .

(Compl., at 33–34.) In a subsequent definitions section, the policy defines "period of restoration" as the time period between the direct physical loss and the earlier of:

> (i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
> (ii) The date when the business is resumed at a new permanent location.

(Compl., at 67.)

In addition to this Business Income coverage, the policy included Civil Authorities Coverage:

> When a Covered Cause of Loss causes damage to property other

2

> than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage . . . ; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Compl., at 35.)

Further, the Plaintiffs' policy included a specific "Virus or Bacteria" exclusion, under which the Defendant would "not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (Compl., at 48, 50.)

On March 14, 2020, in response to the growing threat of COVID-19 in the State of Georgia, Governor Brian Kemp issued an Executive Order declaring a "Public Health State of Emergency." (*See* Compl. ¶ 9; Pl.'s Mot. to Certify, Ex. 2, at 3.) This Executive Order generally activated resources and loosened certain regulation as a response to COVID-19. For example, the Executive Order allowed the grant of temporary licenses to medical professionals and loosened weight restrictions on vehicles providing emergency relief. (*See* Pl.'s Mot. to Certify, Ex. 2, at 4–5.)

As a "direct response" to the Governor's Executive Order, the Plaintiffs

3

closed its dining rooms, the Plaintiffs' primary source of revenue. (Compl. ¶ 13.) On March 27, 2020, the Plaintiffs notified the Defendant of the closure of its dining rooms. (Compl. ¶ 14.) However, after further communication between the Plaintiffs and the Defendant, the Defendant denied coverage for this closure, pointing to the language of the Business Income provision and the Virus or Bacteria exclusion. (Compl. ¶¶ 15–16.) The Plaintiffs claim that the Defendant repeatedly misquoted the policy in their communications and relied on the misquote in denying coverage. (Compl. ¶ 16.) The Plaintiffs note that at no time has there been "any virus located at, on, or in Plaintiff's premises." (Compl. ¶ 17.)

## II.    Legal Standards

### A.  Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95

4

(11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### B.  Motion to Certify

Federal courts have the discretion to certify questions of law to the Supreme Court of Georgia for an answer on determinative state law issues in the cases before them. *See* O.C.G.A. § 15-2-9. "Under this circuit's precedents, we should certify questions to the state supreme court when we have substantial doubt regarding the status of state law." *Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1340 (11th Cir. 2019) (internal quotation marks omitted). As the Eleventh Circuit has noted:

> While this circuit traditionally has been less reluctant than others to certify questions of state law, it nonetheless has been our practice to do so with restraint and only after the consideration of a number of factors: . . . [t]he most important are the closeness of the question and the existence of sufficient sources of state law ... to allow a principled rather than conjectural conclusion.

*Royal Capital Development, LLC v. Maryland Cas. Co.*, 659 F.3d 1050, 1055 (11th Cir. 2011) (internal quotation marks and punctuation omitted).

### III. Discussion

In its Motion to Dismiss, the Defendant argues that the plain language of the Business Income and Civil Authority coverage provisions indicates the Plaintiffs' suspension of their dining room operations is not a covered loss. (Br. in Support of Def.'s Mot. to Dismiss, at 6.) Further, the Defendant argues that even if the closure of the dining rooms represents a covered loss, the policy's "Virus or Bacteria" exclusion precludes coverage. (*Id.* at 10.) In response, the Plaintiffs argue that the closure of their dining rooms qualifies as a "direct physical loss of" a covered property, and that if this Court has any doubts, it should certify a question to the Georgia Supreme Court to define this phrase. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 6, 13.) The Plaintiffs also argue that they have pleaded sufficient facts to state a claim under the Civil Authority coverage provision, and that the "Virus or Bacteria" exclusion is inapplicable because the dining rooms were closed in response to the Governor's Orders, not COVID-19. (*See id.* at 17–18.)

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111 (2012) (punctuation omitted). Construction of the policy's terms are questions of law:

> The court undertakes a three-step process in the construction of the contract, the first of which is to determine if the instrument's language is clear and unambiguous. If the language is unambiguous, the court simply enforces the contract according to its terms, and looks to the contract alone for the meaning.

*American Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 750 (2011) (internal citations omitted). Unambiguous terms must be given effect "even if beneficial to the insurer and detrimental to the insured," and Georgia courts "will not strain to extend coverage where none was contracted or intended." *Jefferson Ins. Co. of New York v. Dunn*, 269 Ga. 213, 215 (1998). By Georgia statute, "the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2.

### A. Business Income Loss Coverage

Because the Plaintiffs and the Defendant argue the plain language of the policy leads to different results, a thorough analysis of the relevant provisions is required here. With regards to the Plaintiffs' Business Income claim, the parties agree that the key phrase is "direct physical loss of or damage to" the covered property.

In seeking to dismiss this claim, the Defendant argues that "a direct physical loss of or damage to" requires some form of physical change to the covered premises. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 6.) Because no physical change occurred at the Plaintiffs' property as a result of COVID-19 or the Governor's Executive Order, no coverage can extend to their losses. (*Id.* at 8.) In response, the "Plaintiffs argue that physical change did occur: prior to the Executive Order, Plaintiffs' dining room space was physically available to patrons, whereas after the Executive Order was issued, Plaintiffs' dining room

7

space was no longer physically available to patrons." (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 13.)

While Georgia case law analyzing this phrase is relatively sparse, both parties discuss at-length one Georgia Court of Appeals case, *AFLAC, Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306 (2003). In *AFLAC*, an insured had several policies with its insurer that included various provisions with three similar phases: "direct physical loss of or damage to;" "direct physical loss of, or damage to;" and, "direct physical loss or damage to." *Id.* at 307. Under these provisions, the insured filed claims with its insurer to cover expenses related to software updates made in preparation for potential fallout from "Y2K." *Id.* at 306.

Despite the different underlying facts and the number of semantic variations analyzed, the decision provides some direction in interpreting the provision before this Court. First, the *AFLAC* court defined some terms relevant here. The court held that the "or" in this context is a coordinating conjunction, meaning the coordinating adjectives "direct physical" "modify the word 'damage' as 'connected' to the word 'loss.'" *Id.* at 308. Further, the court defined "direct" as "without intervening persons, conditions, or agencies; immediate." *Id.* (internal quotation marks and punctuation omitted). In addition, the court found:

> [T]he words "loss of" . . . and the words "damage to" . . . make it clear that coverage is predicated upon a change in the insured property resulting from an external event rendering the insured

property, initially in a satisfactory condition, unsatisfactory.

*Id.*

Both parties have attempted to apply the *AFLAC* understanding of these terms to support their case. The Defendant argues no relevant physical change took place, while the Plaintiffs argue that the Governor's Executive Order generated a physical change that rendered the once-satisfactory dining rooms "unsatisfactory." (*See* Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 6–8; Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 8.)

The Plaintiffs' allegation of a physical change here is curious. The Plaintiffs repeatedly note that COVID-19 has never been identified on the premises.[1] (*See* Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 19–20.) Therefore, no physical change as a result of the virus' presence can be argued here. Instead, the Plaintiffs cast the Governor's Executive Order as imposing some physical change on the covered premises. Under the Plaintiffs' logic, a minute before the Governor issued the Order, the dining rooms existed in one state. A minute later, the Governor issued the Order, and the restaurant

---

[1] This fact, emphasized by the Plaintiffs, distinguishes this case from the cases the Plaintiffs point to as support for their position. One district court in Missouri has declined to dismiss several similar cases, holding that the plaintiffs properly stated a claim of physical loss. *See, e.g., Studio 417, Inc. v. Cincinnati Ins. Co.*, Civ. A. No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020). However, in those cases, the insureds alleged that COVID-19 was present on their premises, and that the virus' presence caused the physical damage. *See id.* at *4. As such, those claims are distinguishable from the Plaintiffs' claims here, where the alleged source of the physical loss is the Governor's Executive Order.

underwent a direct physical change that left the dining rooms in a different state. This interpretation of the contractual language exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support.

First, the claim that the Governor's Executive Order had a "direct" effect on the Plaintiffs' dining rooms defies both the ordinary meaning and the *AFLAC* court's definition of the word. The Order did not have an "immediate" effect on the dining rooms "without intervening persons, conditions, or agencies." *AFLAC*, 260 Ga. App. at 308; *see Direct*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/direct, (last visited Sept. 25, 2020) (defining "direct" as "stemming immediately from a source"). The Order, by its plain terms, declares a Public Health State of Emergency and mobilizes state resources to manage the threat. The Order did not impose limitations on businesses or their operations. The Plaintiffs' closure was likely prudent, but that decision was not made directly by the Order—it was made by intervening persons as a result of intervening conditions. With regards to the Plaintiffs, the Order was at most an official recognition of an already present threat, and it did not have a direct effect on the dining rooms.

Second, holding that the Governor's Executive Order led to a "physical loss of" the dining rooms would massively expand the scope of the insurance coverage at issue here. Under the *AFLAC* definition, the Order would have to generate "a change in the insured property resulting from an external event

10

rendering the insured property, initially in a satisfactory condition, unsatisfactory." *AFLAC*, 260 Ga. App. at 308. As mentioned above, the Order merely recognized an existing threat. It did not represent an external event that changed the insured property. Every physical element of the dining rooms—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—underwent no physical change as a result of the Order. The only possible change was an increased public and private perception of the existing threat, which cannot be deemed a physical change that rendered the property unsatisfactory. The Plaintiffs' construction would potentially make an insurer liable for the negative effects of operational changes resulting from any regulation or executive decree, such as a reduction in a space's maximum occupancy. *See Plan Check Downtown III, LLC v. Amguard Ins. Co.*, Civ. A. No. 2:20-cv-06954, slip op. at 9 (C.D. Cal. Sept. 10, 2020) (outlining scenarios where an insurer would be held liable under this improper construction of the policy).

As a final interpretative argument, the Plaintiffs claim that the Defendant's interpretation of "direct physical loss of" renders the words "damage to" surplusage, which is disfavored under Georgia law. (*See* Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 14.) The Plaintiffs allege that though their dining rooms experienced no damage, they experienced a "physical spatial loss of their dining rooms," and this definition eliminates surplusage concerns between "loss of" and "damage to." (*Id.* at 15.) However, the plain

11

meanings of these terms indicate they have different and complementary meanings in this context.

To determine the plain meaning of these words, Georgia courts look to various dictionaries to provide guidance. *See Western Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 678 (2004) ("In construing a contract of insurance to ascertain the intent of the parties, the court should give a term or phrase in the contract its ordinary meaning or common signification as defined by dictionaries . . . ."). Black's Law Dictionary defines "loss" as "the disappearance or diminution of value," while Merriam-Webster provides "the act of losing possession." *Loss*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Loss*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/loss, (last visited Sept. 25, 2020). Black's Law Dictionary defines "damage" as "loss or injury to person or property," and Merriam-Webster's definition is substantially the same. *Damage*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Damage*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/damage, (last visited Sept. 25, 2020) (defining "damage" as "loss or harm resulting from injury to person, property, or reputation"). These definitions can support two different meanings—that loss is the "disappearance of value" or "the act of losing possession" by complete destruction, while damage is any other injury requiring repair. As an illustrative example, a tornado that destroys the entirety of the restaurant results in a "loss of" the restaurant, while a tree

12

falling on part of the kitchen would represent "damage to" the restaurant.

This understanding of the contract language is further emphasized by the policy's definition of the "period of restoration." Because Georgia law requires that the whole contract should be analyzed to give meaning to its parts, this definition is instructive in analyzing undefined words and phrases. *See* O.C.G.A. § 13-2-2. The "period of restoration" is the time period during which the insurer will cover the insured's business income losses, and is defined as the time between the date of the loss and the earlier of:

(i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
(ii) The date when the business is resumed at a new permanent location.

(Compl., at 67.) This definition appears to contemplate a range of potential covered damages, ranging from those requiring repairs or replacements to those requiring the relocation of the business. This range of contemplated harms aligns with an understanding that "loss of" means total destruction while "damage to" means some amount of harm or injury.

Thus, the contract language issue here is not ambiguous, and because the Governor's Executive Order did not create a "direct physical loss of" the Plaintiffs' dining rooms, the Business Income provision does not apply to the Plaintiffs' claims.[2]

---

[2] This Court notes that though jurisprudence regarding COVID-19 is understandably in its early stages, recent decisions within the Eleventh

13

### B. Civil Authority Coverage

As an alternative means of coverage, the Plaintiffs argue that the policy's Civil Authority provision requires the Defendant to cover their business income losses. This provision states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage . . . ; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Compl., at 35.) The Plaintiffs argue that because of the community spread of COVID-19, property other than its own had been damaged by the virus, which led to the issuance of the Governor's Executive Order. (*See* Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 17–18; Pls.' Surreply Br. in Opp'n to Def.'s Mot. to Dismiss, at 6.)

---

Circuit appear to align with this Court's decision here. *See Malaube, LLC v. Greenwich Ins. Co.*, Civ. A. No. 20-22615-Civ, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) (holding that allegations of "direct physical loss or damage" without alleging that the virus has entered the premises does not state a claim for which relief can be granted); *cf. Mama Jo's Inc. v. Sparta Ins. Co.*, No. 18-12887, 2020 WL 4782369, at *8–9 (11th Cir. Aug 18, 2020) (citing favorably, in a non-pandemic context, *AFLAC*'s definition of "direct physical loss or damage" and rejecting a business interruption claim for losses incurred by construction dust and debris landing in the restaurant over a period of time).

Even accepting the Plaintiffs' allegations of damage to other property as true, the Plaintiffs have not pleaded sufficient facts to demonstrate coverage under the Civil Authority provision. The provision contains several clear conditions precedent for coverage. First, the Plaintiffs have pleaded no facts regarding a civil authority's action that prohibited access to the premises. The Governor's Executive Order had no substantive provisions limiting access to private businesses or their operations. While the Order could be read as "advising" residents to stay home, the Order itself does not represent an action to prohibit access to the described premises. (Pls.' Surreply Br. in Opp'n to Def.'s Mot. to Dismiss, at 6.) And the Plaintiffs point to no other action by a civil authority that could have prohibited access to their dining rooms at the time of the closure. Second, the Plaintiffs pleaded no facts that the areas "immediately surrounding" the damaged properties were blocked by the civil authority. In fact, the Plaintiffs do not identify any particular property around their premises which was damaged by COVID-19 or had its access restricted by a civil authority. Finally, with no damaged property or civil authority action identified, the Plaintiffs cannot plead facts that the civil authority's access limitations resulted from COVID-19 or were necessary to allow the civil authority's unimpeded access to area. Thus, by failing to plead sufficient facts to satisfy several conditions precedent, the Plaintiffs cannot claim coverage

under the Civil Authority provision.[3]

### C. The Plaintiffs' Motion to Certify

As discussed above, the Plaintiffs have failed to state a claim for coverage under this contract. As such, the Plaintiffs have not generated a "substantial doubt regarding the status of state law" required to support certification of these questions to the Georgia Supreme Court. *Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1340 (11th Cir. 2019) (internal quotation marks omitted). A dearth of Georgia Supreme Court decisions addressing a particular phrase cannot be sufficient cause—on its own—to certify a question to that court. That is especially true where, as here, the contract language is unambiguous as to coverage on these facts. Given this Court's view of the unambiguous contract language, this Court will not exercise its discretion to certify the Plaintiffs' proposed questions of law to the Georgia Supreme Court.

### IV.   Conclusion

This Court recognizes the challenging position the Plaintiffs found themselves in. The COVID-19 pandemic has imposed massive changes and pressures on every business and every household in this country. The Plaintiffs, faced with a difficult decision, made a choice that they felt would best ensure the health of their customers and employees. This Court's decision

---

[3] Because the Plaintiffs have not pleaded sufficient facts to support a claim for coverage here, this Court will not proceed to analyze the parties' arguments regarding the Virus or Bacteria exclusion.

here is not a judgment on the Plaintiffs' business sense or the wisdom of shuttering dining rooms in the face of a global pandemic. This decision merely reflects the plain language of the parties' insurance contract.

For the reasons set forth above, the Defendant's Motion to Dismiss [Doc. 4] is GRANTED and the Plaintiffs' Motion to Certify Questions of Law to the Georgia Supreme Court [Doc. 8] is DENIED.

SO ORDERED, this 6 day of October, 2020.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge